# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DANA STOUT, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CAROLYN W. COLVIN, acting )<br>Commissioner Social Security )<br>Administration, )<br>)<br>Defendant. ) | Case No. CIV-14-918-M |

## REPORT AND RECOMMENDATION

Defendant Acting Commissioner Carolyn W. Colvin (Commissioner) issued a final decision denying Dana Stout's (Plaintiff) applications for disability insurance benefits and supplemental security income under the Social Security Act, and Plaintiff seeks judicial review under 42 U.S.C. § 405(g). Chief United States District Judge Vicki Miles-LaGrange referred this matter for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3) and Fed. R. Civ. P. 72(b), and it is now before the undersigned Magistrate Judge. The undersigned has reviewed the pleadings, administrative record (AR), and parties' briefs, and recommends the court affirm the Commissioner's decision.

## I. Disability determination.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps). Under this sequential procedure, Plaintiff bears the initial burden of proving he has one or more severe impairments. *See* 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If he succeeds, the ALJ will conduct a residual functional capacity (RFC)[2] assessment at step four to determine what Plaintiff can still do despite his impairments. *See* 20 C.F.R. §§ 404.1545(e), 416.945(e); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1048 (10th Cir. 1993). Then, if Plaintiff shows he can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that

---

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

such a specific job exists in the national economy. *See Turner*, 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

## II. Administrative proceedings.

In her applications for benefits, Plaintiff alleged her impairments became disabling in November 2009. AR 133, 137. The Social Security Administration (SSA) denied Plaintiff's claims, and at her request, an Administrative Law Judge (ALJ) conducted a hearing. *Id.* at 67-68, 87, 89, 39-63. In his February 2013 decision, the ALJ found Plaintiff is not disabled. *Id.* at 38.

Adhering to the regulatory process adjudicators must follow to determine if a claimant is disabled within the meaning of the Social Security Act, the ALJ found that through December 31, 2014, the date Plaintiff last met the insured status requirements of the Social Security Act, she: (1) was severely impaired by "disorders of the cervical spine, discogenic and degenerative, status post January 2010 and a history of migraine headaches"; (2) had the RFC to perform work at the medium exertional level; (3) could perform her past relevant work as a certified medication technician; (4) could also perform the occupations of hospital admission clerk, animal hospital clerk, and diet clerk; and (5) was not disabled. *Id.* at 27-37. The SSA's Appeals Council received and reviewed additional evidence and found no

3

reason to review the ALJ's decision, which became the Commissioner's final decision. *Id.* at 1-6.

## III. Standard for review.

This Court's review is limited to whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards. *See Wilson v. Astrue,* 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). In determining whether substantial evidence exists, the court "will not reweigh the evidence." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004). As the Tenth Circuit has cautioned, "common sense, not technical perfection, is [the court's] guide." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

## IV. Plaintiff's claims.

Plaintiff raises four errors: (1) the ALJ did not follow the "treating source/physician rule"; (2) substantial evidence does not support the RFC; (3) the ALJ improperly assessed Plaintiff's credibility; and (4) the Appeals Council did not consider new and material evidence. Doc. 20, at 9, 16, 19, 23.

4

### A. The treating physician (Dr. Daniel Lee)'s opinions.

Plaintiff alleges the ALJ erred in affording Dr. Daniel Lee's opinions minimal weight. Doc. 20, at 9-16, *see* AR 35. The undersigned disagrees.

#### 1. The ALJ's duty to weigh medical opinions.

"An ALJ is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record." *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ considers a treating physician's opinion, he is required to "give good reasons in the notice of determination or decision for the weight assigned to a treating physician's opinion." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal quotation marks and alteration omitted). These reasons must be specific and legitimate. *See Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

In weighing a treating physician's opinion, the ALJ's process is specific. He "'must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques[.]'" *Mays. v. Colvin*, 739 F.3d 569, 574 (10th Cir. 2014) (citation omitted). "'If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record.'" *Id.* (citation

5

omitted). "'If the opinion is deficient in either of these respects, then it is not entitled to controlling weight.'" *Id.* (citation omitted). There, the ALJ must proceed to a second determination, where he must both (1) weigh the opinion "under the relevant factors," *id.*; and (2) "give good reasons in the . . . decision for the weight [the ALJ] ultimately assigns the opinion." *Watkins*, 350 F.3d at 1300-01 (internal quotation marks and alteration omitted).

> The relevant regulatory factors include:
>
> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301 (internal quotation marks omitted). So long as the ALJ provides a well-reasoned discussion, his failure to "explicitly discuss" all the factors "does not prevent [the] court from according his decision meaningful review." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

### 2. The weight the ALJ assigned to Dr. Lee.

In giving Dr. Lee's opinion minimal weight, the ALJ concluded:

> Dr. Lee opined that the claimant met listings 12.04 (Affective Disorders) and 12.06 (Anxiety-Related Disorders) (Exhibit 18F). Dr. Lee stated that "patient currently does not go out of the house." The undersigned notes Dr. Lee's premises was incorrect

6

> as the claimant drives, goes out alone, shops in stores (grocery and pharmacy), goes to her mother's home, mows, gardens, waters outside plants, etc. (Exhibit 5E and hearing testimony). The Administrative Law Judge notes that Dr. Lee reported on the questionnaire that he practiced Internal Medicine; thus, he was not a mental health expert. The undersigned gives greater weight to the opinions of mental health experts in the record, such as Dr. Waller. It is also specifically noted that Dr. Lee opined no *PHYSICAL* limitations for the claimant on such a Physical Residual Functional Capacity Form (Exhibit 18F).

AR 35.

Plaintiff contends the ALJ considered only one relevant factor: "whether or not Dr. Lee was a specialist in the area upon which an opinion is rendered." Doc. 20, at 10. An ALJ may legitimately give more weight to a specialist's opinion (here, Dr. Robert Waller[3]) regarding medical issues related to that specialty than to a non-specialist's opinion. *See* 20 C.F.R. § 1527(c)(5). So, the ALJ properly considered that Dr. Lee is not a specialist in affording the physician's opinion less weight.

Second, despite Plaintiff's insistence otherwise, the ALJ did not limit his consideration to whether Dr. Lee is a specialist. Nor did the ALJ give minimal weight to Dr. Lee's opinion based on the ALJ's "own speculation,

---

[3] In challenging the weight the ALJ assigned to Dr. Lee's opinion, Plaintiff complains that the ALJ omitted evidence from Dr. Waller's opinion. Doc. 20, at 10. But Plaintiff does not seek reversal based on this alleged error and the undersigned has not addressed the concern. *See Tietjen v. Colvin*, 527 F. App'x 705, 709 (10th Cir. 2013) (refusing to address "an unspecific, undeveloped, and unsupported" argument).

credibility judgments, or lay opinion." Doc. 20, at 16. Instead, the ALJ noted Dr. Lee's opinions included no "PHYSICAL limitations" for Plaintiff. AR 35, 479; *see also Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (permitting rejection of treating physician's opinion if it is "not supported by specific findings"). He also noted Dr. Lee's observations conflicted with Plaintiff's reported daily activities. AR 35; *see also Newbold v. Colvin*, 718 F.3d 1257, 1266 (10th Cir. 2013) (affirming the ALJ's rejection of the treating physician's opinion, in part because the opinion was "inconsistent with" the plaintiff's own description of her "activities of daily living"). The ALJ provided a well-reasoned decision explaining the weight he assigned to Dr. Lee's opinion and gave legitimate reasons for that weight. *See Watkins*, 350 F.3d at 1300.

### B. The credibility determination.

Plaintiff also challenges the ALJ's determination that her pain allegations were not entirely credible. Doc. 20, at 23-27. Because the ALJ's credibility analysis impacts Plaintiff's RFC argument, the undersigned turns to it next.

#### 1. Standards for evaluating credibility.

This Court reviews an ALJ's credibility determination with deference and generally treats this determination as binding on review. *See Talley v.*

8

*Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990); *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when substantial evidence supports them. *Wilson*, 602 F.3d at 1144; *accord Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

*Luna v. Bowen* sets out the framework for a proper credibility analysis. 834 F.2d 161 (10th Cir. 1987). An ALJ must consider whether (1) the claimant has established a symptom-producing impairment by objective medical evidence; (2) there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) considering all the evidence, both objective and subjective, the claimant's symptoms are disabling. *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (explaining the *Luna* framework).

### 2. The ALJ's credibility analysis.

Plaintiff alleges the ALJ erred in assessing her credibility because he ignored her qualifying testimony regarding her daily activities and pain. Doc. 20, at 24-25. The ALJ summarized the medical evidence and Plaintiff's Function Report – Adult and testimony, detailing her allegations of daily activities and symptoms resulting from her impairments. AR 33-35. After "careful consideration of all of the evidence, the [ALJ] found that [Plaintiff's]

9

medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements considering the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in [the ALJ's] decision." *Id.* at 34.

In doing so, the ALJ acknowledged Plaintiff's testimony that:

> she was unable to work due to severe migraines, insomnia for many years, anxiety attacks, severe panic attacks, scoliosis, muscle spasms in the back, pinched nerve down the right side of her leg, unable to lift leg at times, right leg drags with prolonged standing, unable to have prolonged sitting, must change positions constantly, muscle spasms, goes days without sleeping, may sleep only three hours, possibly four hours, longest time without sleep was give days, but on the average it is three or four days, chronic fatigue due to lack of sleep, poor concentration, dyslexia, problem reading as she is consumed with thoughts of her past, unable to focus her thoughts, thinks about being paralyzed from her neck down for over a month, after getting sick, her brother started molesting her at age 6, raped at age 13 by her brother's friends, unable to get that out of her mind, six inches of curved spine, has shooting pain from a pinched nerve down her right leg, unable to lift leg at that time, and unable to climb stairs due to a pinched nerve. She testified that she woke with a headache four out of five days, has migraines two to four times a week, takes medical three times daily to prevent migraines, she just goes to bed, has short-term memory loss, and poor concentration. The claimant testified that she stopped yard work two years ago, took her three days to mow, and does not leave her house.

*Id.*

The ALJ also considered Plaintiff's reported daily activities, specifically:

> [s]he reported her daily activities as taking her medications; if she had a migraine, she stayed in bed; puts animals out; waters her plants; tried to read for an hour; drives to her mother's house; takes daughter to doctors' appointments; grocery shop; and takes mother to her doctors' appointments. She noted that she took care of her daughter and mother with transportation and shopping; feeds, waters, and cleans kitty litter for her pet; no one helps her with the care for other people or animals; has some problems with meals on a weekly basis; able to wash dishes for 30 minutes, does laundry for one hour, and short periods of mowing that takes three days; waters plants outside on a daily basis; able to drive a car; able to go out alone; shops in stores one time a month for two hours and for her mother three times a month for an hour; able to pay bills, count change, handle a savings account, and use a checkbook and/or money orders; her ability to handle money has not changed since her conditions began; spends time with others, speaks to her mother by phone on a daily basis; on a regular basis, goes to the grocery store, pharmacy, and her mother's home; does not need anyone to accompany her; does not have any problems getting along with family, friends, neighbors, or others; has no limitations in the following areas: squatting, kneeling, talking, hearing, seeing, understanding, following instructions, using hands, and getting along with others; able to lift twenty pounds; walk one-half a mile and then rest for twenty minutes; able to pay attention for twenty minutes; able to get along with authority figures; has never been fired or laid off from a job because of problems getting along with other people; had not noticed any unusual behavior or fear; and did not have any side effects from medication (Exhibit 5E).

*Id.* at 33.

Finally, the ALJ examined Plaintiff's testimony regarding her daily activities:

> she was able to sit for 20 to 30 minutes; prepared meals twice a week, meal preparation has decreased over the past one and one-half years, use to cook four to five days a week, washed dishes up

> to one and one-half years ago when her daughter took over the kitchen, makes her beds, feeds two cats and a dog, has not done house cleaning for one and one-half years, does the laundry, takes out the trash, operates a motor vehicle, leaves her house once a month for grocery shopping and taking her mother and daughter to doctors' appointments, not much driving for the last three years, able to drive alone, has not left the State of Oklahoma, visits her mother once a week to do her medications, visits a friend in Kingfisher three or four times a year, a friend will visit her once every two months, does not visit over the telephone, reads every day, so that she will not lose the ability, and does not have a computer or cell phone.

*Id.* at 34.

Plaintiff contends the ALJ ignored her qualifying testimony that some of these activities are sporadic and often short-length, due to pain. Doc. 20, at 25-26. But the ALJ acknowledged various qualifications – for example that it took Plaintiff three days to mow, her meal preparation had decreased, and her daughter had taken over several chores. In addition, the ALJ also documented discrepancies between Plaintiff's alleged symptoms and limitations and the objective medical evidence, concluding her complaints about "disabling pain" were "exaggerated" and "inconsistent with the record as a whole." AR 34-35. So, the ALJ properly and sufficiently explained the required link between the evidence of record and his finding that Plaintiff's allegations of disabling pain and other limitations were not entirely credible.

## C. The ALJ's alleged error in formulating the RFC.

Plaintiff also argues substantial evidence does not support the ALJ's RFC assessment. Doc. 20, at 20-23. In particular, she maintains he did not adequately consider the frequency and severity of her migraine headaches in either formulating the RFC or in questioning the vocational expert (VE). *Id.* at 21-23. Plaintiff also contends the ALJ's hypotheticals to the VE did not adequately present all of her medically determinable impairments. *Id.* at 22-23.

### 1. The ALJ's RFC assessment.

Plaintiff argues the ALJ found her migraines to be severe but failed to consider the impairment's effect on her RFC. Plaintiff claims her RFC should have included restrictions regarding her need for additional or prolonged breaks and to miss a day of work each week. *Id.* at 22-23. But beyond her testimony, and the physicians' mention of migraines, Plaintiff cites no evidence documenting any actual functional limitations that resulted from migraines. *Id.* at 6, 10, 22-23. Indeed, the record contains sparse information regarding Plaintiff's migraines, apart from Plaintiff's self-reporting and Dr. Lee's notes. Though Dr. Lee prescribed medication to treat the migraines, he never opined they were disabling, nor did he note Plaintiff's migraines (or any other impairment) caused any physical limitations. *See* AR

35, 479. Similarly, Drs. Waller and Mark Carlson noted Plaintiff's migraine history, but neither physician described any physical limitations resulting from the impairment. *Id.* at 418-21, 427-29. Finally, the undersigned has already concluded Plaintiff has failed to establish that the ALJ committed erroring connection with his assessment of Plaintiff's credibility. So, substantial evidence of record supports the ALJ's RFC formulation. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (holding that where the medical record did not establish the alleged physical limitation "the ALJ did not err by failing to include [the] alleged limitation in his RFC assessment").

### 2. The ALJ's hypothetical questions.

Regarding the VE's questioning, an ALJ may properly rely on a vocational expert's testimony if the hypothetical question(s) he poses to the expert adequately and precisely reflect the claimant's impairments and limitations, but the questions "need only reflect impairments and limitations . . . borne out by the evidentiary record." *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996) (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1992) and *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995)).

The ALJ posed several hypothetical questions to the VE, some including more restrictive limitations than included in Plaintiff's RFC. AR 57-61. Plaintiff appears to argue that the ALJ should have relied upon one of

14

the more restrictive hypotheticals, under which Plaintiff would not have been able to perform either her past relevant work or the other jobs the VE identified. Doc. 20, at 23 (selectively citing *Decker*,[4] 86 F.3d 953 (10th Cir. 1996), and *Bean v. Chater*, 77 F.3d 1210 (10th Cir. 1995)).

"Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Hargis*, 945 F.2d at 1492 (10th Cir. 1991) (internal quotation marks omitted). But if the ALJ does not ultimately adopt a hypothetical question he poses to the VE, that hypothetical does not bind the ALJ. *See Bean*, 77 F.3d at 1214 ("The ALJ was not required to accept the answer to a hypothetical question that included limitations claimed by plaintiff but not accepted by the ALJ as supported by the record."). The ALJ properly assessed Plaintiff's RFC and he included all the limitations in a hypothetical question to the VE.

**D. The Appeals Council's rejection of evidence.**

Finally, Plaintiff alleges the Appeals Council erred in failing to consider new evidence. Doc. 20, at 27-29. In this case, the Appeals Council did not err

---

[4] Plaintiff cites *Heckler v. Chater*, 36 F.3d 953 (10th Cir. 1996), but the undersigned presumes Plaintiff intends to reference *Decker v. Chater*, 86 F.3d 953 (10th Cir. 1996), as the previous case does not appear to exist. *See* Doc. 20, at 22, 23.

15

in declining to review the ALJ's decision in light of the new evidence Plaintiff submitted.

### 1. The applicable standard.

The Appeals Council:

> will consider all the evidence in the [ALJ] hearing record as well as any new and material evidence submitted to it which relates to the period on or before the date of the [ALJ] hearing decision. If [a claimant] submit[s] evidence which does not relate to the period on or before the date of the [ALJ] hearing decision, the Appeals Council will return the additional evidence to [the claimant] with an explanation as to why it did not accept the additional evidence and will advise [the claimant] of [his or her] right to file a new application.

20 C.F.R. §§ 404.976(b)(1), 416.1476(b)(1); *accord id.* §§ 404.970(b) ("[I]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ] hearing decision."); 416.1470(b) (same). "[A]ny new evidence submitted to the Appeals Council on review becomes part of the administrative record to be considered when evaluating the Secretary's decision for substantial evidence." *Blea v. Barnhart*, 466 F.3d 903, 908 (10th Cir. 2006) (quotation omitted).

### 2. Plaintiff's "new" evidence.

After the ALJ issued his decision, Plaintiff submitted a June 16, 2010 medical report from Dr. Lonnie Litchfield. Plaintiff contends the Appeals Council failed to consider this evidence. Doc. 20, at 28-29.

The Appeals Council stated:

> We also considered the narrative report dated June 16, 2010, from Dr. Lonnie Litchfield of The Broadway Clinic.
>
> This evidence indicates that you have 60 pounds of force in your right dominant hand, and 44 pounds of force in your left hand. Dr. Litchfield further indicated that you continue to need pain management, and cannot perform your prior work. However, Dr. Litchfield also opined that you are an excellent candidate for vocational rehabilitation job training.
>
> We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

AR 2.

Notably, Plaintiff does not explain why the 2010 report was not part of the administrative record, apart from stating the ALJ "erroneously excluded" it. Doc. 20, at 28; *see also* AR 42 (ALJ asks counsel if he had "an opportunity to review the record," counsel affirms he did and had no objection to the admission of Exhibits 1-A to 19-F). Regardless, the Appeals Council considered the report. AR 2. Because the Appeals Council considered Dr. Litchfield's letter but concluded it did not affect the outcome, this Court examines it as part of the record. *See Martinez v. Barnhart*, 444 F.3d 1201,

1208 (10th Cir. 2006); *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994) (Because the Appeals Council considered the supplemental treatment records, the records are a "part of the administrative record to be considered by this court when evaluating the ALJ's decision for substantial evidence.").

Dr. Litchfield considered Drs. Parkinson and Nguyen's opinions and concluded Plaintiff's neck injury resulted from work-related activities and resulted in a "36.5% whole person permanent partial impairment to her cervical spine." AR 487-88. Dr. Litchfield opined Plaintiff could not perform her prior work related duties, recommended pain management, and noted she would be an excellent candidate for vocational rehabilitation to help train her in a job consistent with her physical limitations and help her find suitable employment." *Id.* at 488-89. No error occurred with respect to the Appeals Council's consideration of the additional and the undersigned recommends the court affirm on this ground.

## V. Recommendation and notice of right to object

The undersigned recommends the court affirm the Commissioner's decision.

The undersigned advises the parties of their right to object to this report and recommendation by the 22nd day of October, 2015, under 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The undersigned further advises the

18

parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 2nd day of October, 2015.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE